IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DENNIS C. JACKSON, | ) | |
| | ) | |
| Petitioner, | ) | 8:15CV447 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| SCOTT FRAKES, Director, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

Dennis C. Jackson (Jackson or Petitioner) has filed a petition for writ of habeas corpus under the provisions of 28 U.S.C. § 2254. The Respondent has answered and filed the relevant state-court records. The parties have now fully briefed the case. I deny the petition with prejudice for the reasons set forth below.

*Background and Claims*

Jackson had three lawyers in the state courts. He had trial counsel. He had separate counsel at sentencing and on direct appeal. And, he had yet a third lawyer in his state post-conviction action when it was litigated before the state district court, but he appealed the decision denying relief pro se.[1] Jackson needed three lawyers because he was in big trouble.

---

[1] Jackson tried to "fire" his highly experienced and well-regarded court-appointed lawyer in the state post-conviction matter, but his motion was denied. The state judge informed Jackson that he could file his own documents before the district court along with those filed by his counsel and, if his motion for post-conviction relief was denied, he could appeal pro se. (Filing no. 8-14.) To the extent, if at all, Jackson lays any of the blame for his lack of success on Mr. Hug, his post-conviction counsel before the state district court, I find and conclude that such an assertion is frivolous.

On February 22, 2008, in the District Court of Douglas County, Nebraska, a jury found Petitioner guilty of three counts of first-degree assault, three counts of use of a deadly weapon to commit a felony, and one count of possession of a deadly weapon by a felon.

The evidence against him was overwhelming. As a prohibited person, he shot three individuals at a residence. They were seriously injured—the injuries were life-threatening and each required surgery. They survived and testified against him. An eye-witness to the shooting also testified against him. She had driven Jackson to the site of the shooting and entered the residence with him. Basically, she confirmed the accounts of the victims. During a search by the police of the victims' residence, no guns were found. Jackson fled to Michigan with the gun he used. The shell casings found at the scene matched the gun found at the hotel in Michigan where Jackson was captured.

Jackson offered a self-defense at trial. Essentially, he claimed that he was trying to buy drugs from the three victims, two pulled guns, and the three sought to rob him. He claimed he acted in self-defense, and he only shot them after wresting one of the guns from one of the shooting victims who had pointed the weapon at him. The jury didn't buy it.

The state district court sentenced Petitioner to consecutive prison terms of 15 to 20 years for each count of first-degree assault and use of a deadly weapon to commit a felony and 10 years for possession of a deadly weapon by a felon. The convictions and sentences were affirmed on direct appeal by the Nebraska Court of Appeals on February 17, 2009. The Nebraska Supreme Court denied Petitioner's request for further review on May 14, 2009.

On March 1, 2010, Petitioner filed for post-conviction relief in the state district court, which was denied in October of 2014 following an evidentiary hearing. Petitioner promptly appealed. The Nebraska Court of Appeals affirmed the state district court's denial of post-conviction relief on September 15, 2015. The Nebraska Supreme Court

denied Petitioner's request for further review on October 28, 2015, and the mandate was issued on November 18, 2015.

Petitioner filed his timely habeas petition on December 14, 2015. After initial review, I found that Jackson was asserting the following claims:

Claim One: Petitioner was deprived effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because Petitioner's appellate counsel (1) failed to file a motion for rehearing in the Nebraska Court of Appeals; (2) failed to raise the issue of prosecutorial misconduct; (3) failed to assert that trial counsel was ineffective by failing to object to, request a curative instruction, or move for mistrial due to prosecutorial misconduct; (4) failed to allege that trial counsel was ineffective by not adequately preparing for trial, not conducting a thorough investigation, and by failing to interview and locate certain witnesses; (5) failed to allege that trial counsel was ineffective by not arguing that a witness was incompetent to testify; (6) failed to raise trial counsel's failure to interview Petitioner regarding his trial testimony; (7) failed to raise trial counsel's failure to obtain telephone records; (8) represented Petitioner despite having a conflict of interest; (9) failed to assert that the evidence was insufficient to convict Petitioner; (10) failed to argue that the jury instructions were improper; (12) failed to argue that the order on Petitioner's motion in limine was violated; and (13) failed to raise nine issues on petition for further review in the proper format and constitutional context.

Claim Two: Petitioner was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments because trial counsel (1) failed to object to, request a curative instruction, or move for mistrial due to prosecutorial misconduct; (2) failed to adequately prepare for trial, investigate, interview, examine, locate, and subpoena certain witnesses; (3) failed to argue that a witness was not competent to testify at trial; (4) failed to fully interview

|  |  |
|---|---|
|  | Petitioner in relation to his testimony at trial; and (5) failed to obtain telephone records. |
| Claim Three: | Petitioner was denied a fair trial due to prosecutorial misconduct. |
| Claim Four: | The cumulative effect of the prosecutorial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel denied Petitioner due process. |
| Claim Five: | Petitioner was denied effective assistance of counsel at sentencing because counsel (1) failed to review the pre-sentence report and discuss the report with Petitioner; (2) failed to investigate whether the information in the pre-sentence investigation report regarding Petitioner's prior criminal convictions was accurate; and (3) failed to raise the inaccuracies of Petitioner's prior criminal history and request an evidentiary hearing to correct the errors as requested by Petitioner. |
| Claim Six: | Petitioner was denied due process when the trial court failed to inquire if Petitioner had the opportunity to read the pre-sentence investigation report and sentenced him based on an inaccurate criminal history. |
| Claim Seven: | Petitioner was convicted based on insufficient evidence. |

(Filing no. 5 (on initial review condensing and summarizing for clarity Petitioner's claims).)

The direct appeal may be found at filing no. 8-3, and it is reported at *State v. Jackson*, No. A-08-579, 2009 WL 416066 (Neb. App. Feb. 17, 2009) ("*Jackson I*"). The state district court denied post-conviction relief in a written order on October 6, 2014. (Filing no. 8-13 at CM/ECF pp. 165-69.) The post-conviction appeal may be found at filing no. 8-13 and filing no. 8-4, and that decision is reported at *State v. Jackson*, No. A-14-954, 2015 WL 5440234 (Neb. App. Sept. 15, 2015) ("*Jackson II*").

Petitioner's brief is 313 pages in length. (Filing no. 18.) It was so long the Clerk had to break it into two parts to file it. The length of the brief is inversely related to the persuasiveness of it. In contrast, the Respondent's briefs are direct and to the point while also being sufficiently detailed. (Filing no. 14; filing no. 18.) In this vein, Respondent has filed all of the relevant state-court records. (Filing no. 8; filing no. 9; filing no. 21.)

### *Specifics of Direct Appeal*

Jackson filed a direct appeal to the Nebraska Court of Appeals, alleging that the district court erred because (1) the State presented insufficient evidence to overcome Jackson's motion to dismiss or for a directed verdict and for the jury to find Jackson guilty, (2) it allowed testimony regarding a bulletproof vest after granting a motion in limine relative thereto, (3) Jackson received ineffective assistance of counsel, (4) it presented an incorrect jury instruction to the jury, (5) it imposed sentences disproportionate to the crimes, (6) it imposed sentences that were cruel and unusual, (7) it imposed excessive sentences, (8) it failed to consider the case-law factors in imposing the sentence, and (9) it imposed all consecutive sentences. (Filing no. 8-3 at CM/ECF p. 2); *Jackson I, supra* at *1.

Regarding his claim of ineffective assistance of counsel, Jackson alleged that trial counsel was ineffective for failing to (1) raise any resistance to the violation of the motion in limine, (2) make a motion to dismiss at the close of all the evidence, and (3) perform several acts contained in a letter written by Jackson, including witnesses to be called, testimony to be elicited, and motions to be filed on Jackson's behalf. (Filing no. 8-3 at CM/ECF pp. 4-5); *Jackson I, supra* at *3-4. The Court of Appeals found (1) Jackson's first two claims of ineffective assistance of trial counsel to be without merit, and (2) the record on direct appeal to be insufficient to address his third claim of ineffective assistance of counsel because it involved knowledge of trial counsel's reasons for acting or not acting on Jackson's requests. (Filing no. 8-3 at CM/ECF pp. 4-5); *Jackson I, supra* at *3-4.

5

The Court of Appeals also found the remainder of Jackson's direct-appeal claims to be without merit. Accordingly, his conviction and sentence were affirmed.

### *Specifics of Post-Conviction Appeal*

Following the evidentiary hearing on Jackson's post-conviction motion and the state district court's denial of the motion, Jackson appealed to the Nebraska Court of Appeals alleging that the district court erred in seven different respects. (Filing no. 8-4 at CM/ECF p. 2); *Jackson II*, *supra* at *1. On September 15, 2015, the Nebraska Court of Appeals entered an unpublished opinion affirming the state district court's denial of post-conviction relief. (Filing no. 8-4); *Jackson II*, *supra*.

In its opinion, the Nebraska Court of Appeals rejected Jackson's seven assignments of error. As a condensed summary, this is what the court decided:

(1) Jackson's claims of prosecutorial misconduct and ineffective assistance of trial counsel concerning those alleged instances of misconduct were procedurally barred, and his claim of ineffective assistance of appellate counsel for not challenging the alleged instances of prosecutorial misconduct was without merit. (Filing no. 8-4 at CM/ECF pp. 3-8); *Jackson II*, *supra* at *2-6.

(2) Portions of Jackson's claim that his trial counsel provided ineffective assistance concerning a variety of potential witnesses and evidence were procedurally barred, and the remainder of Jackson's allegations of ineffective assistance of trial counsel under this claim, along with his claim that his appellate counsel provided ineffective assistance concerning those instances of trial counsel's alleged ineffectiveness, were without merit. (Filing no. 8-4 at CM/ECF pp. 8-11); *Jackson II*, *supra* at *7-9.

(3) Jackson's various claims of ineffective assistance of appellate counsel were without merit. (Filing no. 8-4 at CM/ECF pp. 11-15); *Jackson II*, *supra* at *9-13.

(4) Jackson's claim of cumulative error was without merit. (Filing no. 8-4 at CM/ECF p. 15); *Jackson II*, *supra* at *13.

(5) Jackson's claim of judicial misconduct and trial error during his trial was procedurally barred. (Filing no. 8-4 at CM/ECF pp. 15-16); *Jackson II*, *supra* at *13-14.

(6) Jackson's claim that the district court erred in denying his motion to discharge counsel appointed to represent him in the state post-conviction proceeding was without merit. (Filing no. 8-4 at CM/ECF p. 16); *Jackson II*, *supra* at *14.

(7) Jackson's claim that the district court erred in denying his motion for the court's recusal was without merit. (Filing no. 8-4 at CM/ECF pp. 16-17); *Jackson II*, *supra* at *14-15.

## *Overview of Applicable Law*

Three strands of federal habeas law intertwine to decide this case. They are the law of procedural default, the deference that is owed to the state courts, and the standard for evaluating a claim of ineffective assistance of counsel.

I briefly set out those principles now, so that I may apply them later in a summary fashion as I review Jackson's claims. I turn to that task next.

## *Procedural Default*

As set forth in 28 U.S.C. § 2254:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B)    (i)    there is an absence of available State corrective process; or

>              (ii)     circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A state prisoner must therefore present the substance of each federal constitutional claim to the state courts *before* seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See* Akins v. Kenney, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law

ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### *Nebraska Law Relevant to Procedural Default*

Under Nebraska law, you don't get two bites of the post-conviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased."); *State v. Filholm*, 848 N.W.2d 571, 576 (Neb. 2014) ("When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.").

*Deference Under 28 U.S.C. § 2254(d)*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id*. However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes

clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

Worthington v. Roper, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

### *The Especially Deferential Strickland Standard*

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of Strickland v. Washington, 466 U.S. 668 (1984), must be applied. The standard is very hard for defendants to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the

11

petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

The Supreme Court has recently emphasized that *Strickland* applies equally to appellate counsel, and that appellate counsel is entitled to the "benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (a "fairminded jurist" could have concluded that repetition of anonymous tip in state-court cocaine-possession trial did

12

not establish that the uncontested facts it conveyed were submitted for their truth, in violation of the Confrontation Clause, or that petitioner was prejudiced by its admission into evidence, precluding federal habeas relief under Antiterrorism and Effective Death Penalty Act (AEDPA); Petitioner could not establish that Petitioner's appellate counsel was ineffective, as appellate counsel was entitled to the "benefit of the doubt").

### *Claim One—Ineffective Assistance of Appellate Counsel*

All grounds set forth under Jackson's first habeas claim were addressed on the merits by the Nebraska Court of Appeals in Jackson's post-conviction appeal. Giving the deference that is due, there is no basis for overturning that decision. Moreover, my independent evaluation and application of the *Strickland* standard convinces me that Claim One is not meritorious because neither prong of *Strickland* has been satisfied.

### *Claim Two—Ineffective Assistance of Trial Counsel*

Grounds 1, 4, and 5 of Claim Two are procedurally defaulted as they were not included in Jackson's direct appeal. He has not shown adequate cause or prejudice to excuse the procedural default. Moreover, there is no showing of a fundamental miscarriage of justice. Jackson is definitely *not* "actually innocent." Moreover, these grounds were addressed by the state courts because Jackson alleged ineffective assistance of appellate counsel for failing to raise those allegations on direct appeal. Since I have found that Claim One regarding appellate counsel does not warrant relief, even if Grounds 1, 4, and 5 of Claim Two were not procedurally defaulted, they would not entitle Jackson to relief in any event.

The other portions of Claim Two that were not procedurally defaulted were dealt with by the Nebraska Court of Appeals. Giving the deference which is due, Claim Two must be denied on those grounds as well. Furthermore, my independent evaluation and

application of the *Strickland* standard convinces me that Claim Two in its entirety is not meritorious.

### Claim Three—Prosecutorial Misconduct

Although this claim was presented to the state courts in Jackson's state post-conviction proceedings, the Nebraska Court of Appeals did not reach the merits because Jackson did not raise the claims at the first opportunity, i.e., on direct appeal. (Filing no. 8-4 at CM/ECF p. 4); *Jackson II*, *supra* at *3, 8-9, 13-14. The Nebraska Court of Appeals' decision to not address the merits of Jackson's claims was based on well-established Nebraska procedural rules. Once again, there is no adequate showing that would excuse this procedural default.

### Claim Four—The Cumulative Effect

Jackson gripes about the "cumulative effect" of prosecutorial misconduct and ineffective assistance of counsel. As the Nebraska Court of Appeals found, because "Jackson has failed to demonstrate any error, he has similarly failed to demonstrate that there is cumulative error meriting relief." (Filing no. 8-4 at CM/ECF p. 15); *Jackson II*, *supra* at *13. Jackson cannot establish that the decision of the Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, there is no merit to Jackson's fourth habeas claim.

### Claim Five—Ineffective Counsel And The Presentence Report

Jackson was sentenced to a total of 100 to 130 years' imprisonment. Jackson will be eligible for parole in roughly 50 years, less the 408 days he was given credit for, and his mandatory discharge will be in about 65 years, less that same amount. The Nebraska Court of Appeals, cognizant of the length of the sentence, found that the

*Strickland* standard was not violated regarding the presentence report. The Court of Appeals wrote:

> Jackson . . . asserts that his appellate counsel, who also represented him at the time of sentencing, was ineffective because counsel "failed to review the presentence report and discuss it with [Jackson]." Brief for Appellant at 46. Jackson argues that his prior record was inaccurately presented in the presentence report and that the court used the inaccurate prior record as a factor in sentencing Jackson. We find no merit to this assertion.
>
> Jackson's primary argument on this issue is that at sentencing the trial court, based on information in the presentence report, stated that Jackson had "a previous conviction of an armed robbery with a firearm of a business, marijuana delivery charge . . . and a criminal mischief felony charge." Jackson testified in his deposition that when the court stated this, Jackson "tapped [counsel] on the arm, like I didn't get convicted of no armed robbery. I ain't ever got convicted of no felony mischief." He argues on appeal that he has never been convicted of "armed" robbery or felony criminal mischief.
>
> On direct appeal, Jackson's appellate counsel asserted that the sentence imposed against him was excessive. In our review of Jackson's sentence, we discussed all of the various factors to be considered in assessing whether a sentence imposed demonstrates an abuse of discretion. We noted Jackson's extensive criminal record, including numerous violations beginning when he was only 14 years of age and including numerous convictions in just over 5 years' time, most of which was spent in and out of jail. In reviewing that history, we recognized that among Jackson's criminal history, he had a "conviction [ ] for robbery (he robbed post office with gun), . . . [and a conviction for] criminal mischief." *Jackson I, supra* at *7.
>
> We also noted that the substance abuse questionnaire in this case placed Jackson in the maximum risk range on the violence and antisocial scales. The presentence report also indicated that Jackson showed no remorse for the present offenses and little remorse for past offenses, Jackson had a demonstrated history of noncompliance with court orders, Jackson had a history of assault and anger problems, and Jackson was a documented gang member. The presentence report

15

> included the conclusion that Jackson had more than amply demonstrated that he is an extremely dangerous individual and a very high risk for reoffending.
>
> In this case, the nature of the present offenses and the violence involved therein was a substantial factor in the sentences imposed. As we noted in our opinion on Jackson's direct appeal, he shot three unarmed men over what he alleged was a missing or stolen gun. He specifically sought out the victims at the home where two of them resided and, according to the jury's verdict, the victims were unarmed and did not threaten or provoke him. The victims suffered multiple gunshot wounds requiring surgery for life-threatening injuries. Jackson then fled the jurisdiction for several months before being apprehended in Michigan where he was found in the company of other felons at a known drug location and in the possession of a gun.
>
> Our consideration of Jackson's prior record when we considered his challenge to the sentence imposed was not based on a belief that he was convicted of armed robbery or felony criminal mischief; rather, we recognized a prior conviction for robbery and for criminal mischief. The fact that the robbery conviction was based on a factual situation wherein Jackson robbed a business with a gun is pertinent, even if the conviction was not for "armed" robbery.
>
> Jackson was sentenced to a total of 100 to 130 years' imprisonment, but his convictions carried the possibility of more than 200 years' imprisonment and the sentences imposed were well within the statutory range of permissible sentences and not at the high end of that range. Jackson has not demonstrated that the sentences imposed would have been different had the trial court's alleged misstatement of Jackson's record been raised by counsel at his sentencing.

(Filing no. 8-4 at CM/ECF pp. 12-13); *Jackson II*, *supra* at *10-11.

As I read the opinion of the Court of Appeals, it is clear that the court concluded, after thorough review, that Jackson could not show any prejudice regarding counsel's representation regarding the PSR and, thus, the second prong of *Strickland* was not satisfied. Giving the court the deference it is due, Jackson is not entitled to relief on his

16

fifth claim. Furthermore, my independent evaluation and application of the *Strickland* standard convinces me that Claim 5 has no merit.

### *Claim Six—Due Process And The Presentence Report*

Petitioner complains that because the trial judge did not inquire of him whether he had read the presentence report, he was denied due process. In the post-conviction appeal, Jackson raised that claim. However, the Court of Appeals found that the argument was procedurally defaulted because it could have been raised in the direct appeal. (Filing no. 8-4 at CM/ECF p. 15.); *Jackson II*, *supra*, at *13. Jackson has made no showing sufficient to overcome this procedural default.

### *Claim Seven—Insufficiency of Evidence*

Jackson claims the evidence was insufficient. In addition to this claim being frivolous, as the Court of Appeals found, "there was overwhelming evidence to support Jackson's convictions on all charges." (Filing no. 8-3 at CM/ECF p. 5); *Jackson I*, *supra* at *4. Moreover, the issue of self-defense was presented to the jury, "but the jury obviously rejected Jackson's story." (Filing no. 8-3 at CM/ECF p. 3); *Jackson I*, *supra* at *2. Jackson cannot establish that the decision of the Court of Appeals finding sufficient evidence for all of Jackson's convictions was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, there is no merit to Jackson's final habeas claim.

### *No Certificate of Appealability*

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district

court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that:

1. The petition (filing no. 1) is denied and dismissed with prejudice.

2. The court will not issue a certificate of appealability in this matter.

3. The court will enter a separate judgment in accordance with this order.

DATED this 26th day of October, 2016.

                    BY THE COURT:
                    s/ *Richard G. Kopf*
                    Senior United States District Judge